UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X

CARLTON WHITELY,

        Plaintiff,

  -against-

THE CITY OF NEW YORK, a municipal entity; and
New York City Police Officers JOHN and/or JANE
DOE 1, 2, 3, etc. (whose identity are unknown but
who are known to be personnel of the New York City
Police Department), all of whom are sued
individually and in their official capacities,

        Defendants.

-------------------------------------------------------------------- X

**VERIFIED COMPLAINT**

**JURY TRIAL**

    Plaintiff CARLTON WHITELY, by his attorneys, Beldock Levine & Hoffman LLP, as and for his verified complaint against the defendants, alleges as follows:

## PRELIMINARY STATEMENT

    1. In this civil rights action, plaintiff, brought under 42 U.S.C. § 1983, plaintiff seeks redress for injuries caused by the unconstitutional conduct of defendant police officers JOHN and/or JANE DOE 1, 2, 3, etc., in unlawfully stopping, frisking, and searching plaintiff's vehicle, leading to his wrongful arrest, as well as the injuries he suffered as a result of the polices, practices, and/or customs of defendant CITY OF NEW YORK that led to the unlawful stop and frisk of plaintiff and the unconstitutional search of his vehicle.

    2. In the early morning hours of August 4, 2012, plaintiff was sitting in his car, parked outside Lincoln Terrace Park, talking on his phone and eating food, when defendant police officers pulled up alongside him and, in absence of probable cause or a warrant, ordered him out of his car. One defendant officer unlawfully frisked plaintiff and verbally abused him with racially degrading

language, while the other two defendant officers unlawfully searched his vehicle. One defendant officer found an unlabeled prescription bottle containing medication for acid reflux disease in the car's center console. Plaintiff was arrested, baselessly charged with two counts of possession of a controlled substance and transferred to Central Booking, where he was eventually released after the Kings County District Attorney's Office declined to prosecute the defendant officers' baseless charges against him.

3.   Plaintiff seeks (i) compensatory damages for loss of liberty, psychological and emotional distress and other financial loss caused by the illegal actions of the defendants; (ii) punitive damages to deter such intentional or reckless deviations from well-settled constitutional law; and (iii) such other and further relief, including costs and attorney's fees, as this Court deems equitable and just.

## JURISDICTION

4.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(a)(3) and (a)(4), as this action seeks redress for the violation of plaintiff's constitutional and civil rights.

## VENUE

5.      Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which the events giving rise to plaintiff's claims took place.

## JURY DEMAND

6.      Plaintiff demands a trial by jury in this action on each and every one of his claims for which jury trial is legally available.

## THE PARTIES

7.      Plaintiff CARLTON WHITELY is an African American permanent resident alien, who had lived in the United States since 1983, and was at all times relevant to this complaint a resident of Suffolk County, hamlet of Dix Hills, town of Huntington, and State of New York.

8.      Defendant THE CITY OF NEW YORK ("the City") is a municipal entity created and authorized under the laws of the State of New York.

9.      The City is authorized by law to maintain a police department, and does maintain the New York City Police Department ("NYPD"), which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

10.      Defendants JOHN and JANE DOE 1, 2, 3, etc. are NYPD Police Officers who unlawfully detained, frisked, and arrested plaintiff without suspicion of any illegal activity and lodged false criminal charges against him.

11.      At all times relevant herein, defendants JOHN and JANE DOE 1, 2, 3, etc. have acted under color of state law in the course and scope of their duties and/or functions as agents, employees, and/or officers of the City and/or the NYPD, and incidental to the lawful pursuit of their duties as agents, employees, and/or officers of the City and/or the NYPD.

12.      At all times relevant herein, defendants JOHN and JANE DOE 1, 2, 3, etc. violated clearly established rights and standards under the Fourth and Fourteenth Amendments to the United States Constitution, of which a reasonable police officer in his circumstances would have known.

3

## STATEMENT OF FACTS

13.     On August 3, 2012, at approximately 11:00 P.M., plaintiff arrived at the Lincoln Terrace Park tennis courts, in Crown Heights, Brooklyn.

14.     Plaintiff played tennis until the early morning hours of August 4, 2012.

15.     At approximately 1:00 A.M., plaintiff left the park and walked to his car, a 2004 Nissan Altima, which was parked on the west side of Portal Avenue, facing south, near Union Avenue, just outside the park.

16.     After returning to his car, plaintiff sat inside talking on the phone with his friend, Robert Capers, and eating Jamaican food that he had ordered before playing tennis.

17.     Plaintiff's vehicle's engine was running, as he was using the air conditioning, but his headlights were off.

18.     At approximately this time, an unmarked Sport Utility Vehicle ("SUV") carrying three plainclothes police officers drove west on Union Avenue.

19.     All three officers were white or Latino males.

20.     The SUV approached the stop sign at the corner of Union Avenue and Portal Avenue and made a left onto Portal Avenue.

21.     After turning, the SUV pulled up parallel to plaintiff's car and stopped.

22.     The occupant sitting in the front passenger seat of the SUV, officer DOE 1, leaned out the window and motioned for plaintiff to put down his window.

23.     Plaintiff complied, putting his window down approximately three inches.

24.     Officer DOE 1 asked plaintiff, in sum and substance, "What are you doing?"

25.     Plaintiff responded, in sum and substance, "I'm talking on the phone."

26.     Immediately after plaintiff's response, the three plainclothes NYPD officers got out of the SUV.

27.     Officer DOEs 1, 2, and 3 acted extremely aggressive toward plaintiff throughout the entire encounter.

28.     Officer DOE 1 approached plaintiff's car and ordered him to fully roll down the window.

29.     Plaintiff complied with DOE 1's order.

30.     At approximately this time plaintiff ended his phone call.

31.     Officer DOE 1 demanded to see plaintiff's license and registration.

32.     Plaintiff removed his license from his wallet, removed the registration from his glove compartment, and handed both to officer DOE 1.

33.     Officer DOE 1 briefly looked at the documents plaintiff handed him and, without probable cause, reasonable suspicion plaintiff was armed, or any other legal justification, ordered plaintiff out of his car.

34.     Plaintiff opened his door, rolled up his windows, turned off the engine, removed his keys from the ignition, and stepped out of his vehicle.

35.     After exiting his car, plaintiff closed the driver's side door and engaged the automatic door locks through the remote control device on his keychain.

36.     Officer DOE 1 ordered plaintiff to stand behind his vehicle.

37.     As plaintiff walked toward the back of his vehicle, officer DOE 2 approached plaintiff and grabbed the keychain from his hand.

38.     Officer DOE 2 then unlocked plaintiff's vehicle's doors with the remote device on his keychain.

39.     As plaintiff stood behind his car with officer DOE 1, officers DOE 2 and DOE 3, without a search warrant or probable cause, unlawfully searched the interior of plaintiff's car, including his glove compartment, center console, and under the seats.

40.     At approximately this time, without reasonable suspicion, officer DOE 1 frisked plaintiff.

41.     Officer DOE 1 did not find contraband on plaintiff's person.

42.     Prior to, during, and after the frisk, officer DOE 1 verbally berated plaintiff with racially offensive statements, including, in sum and substance, "you think you're one of those smart niggers?"

43.     At approximately this time, officer DOE 2 or 3 opened the center console of plaintiff's car.

44.     Officer DOE 2 or 3 removed a half-filled prescription medication bottle that did not contain a label.

45.     Plaintiff suffers from gastroesophageal reflux disease ("acid reflux disease") and regularly takes medication to treat this condition.

46.     Plaintiff's friend, Sandy Cordero, who also suffers from acid reflux disease, provided plaintiff with the pills.

47.     Before giving plaintiff the bottle, Mr. Cordero removed the label because it contained his name, address, and medical information.

48.     Upon information and belief, medication to treat acid reflux disease is widely available over-the-counter as well as through a doctor's prescription.

49.     The pills prescribed to plaintiff's friend contain a higher dosage than the over-the-counter alternative.

6

50.     Upon information and belief, officer DOE 2 or 3 opened the bottle and inspected the pills.

51.     The tablet form pills inside the bottle were oval shaped and contain the chemical compound formula as well as the dosage contained.

52.     Officer DOE 2 or 3 stepped out of the car, approached plaintiff and officer DOE 1, and yelled, in sum and substance, "we got you now."

53.     Plaintiff stated, in sum and substance, "those are pills for my acid reflux condition."

54.     Plaintiff explained to officers DOE 1, 2, and 3 that he suffers from acid reflux disease and was given the pills by his friend diagnosed with the same condition.

55.     Defendant officer DOEs 1, 2, and 3 ignored plaintiff's explanation.

56.     At approximately this time, officer DOE 1 pushed plaintiff onto the trunk of his car, handcuffed him, and placed him in the back of the SUV.

57.     Officer DOEs 1 and 2 transported plaintiff to the 73rd Precinct.

58.     Officer DOE 3, without plaintiff's permission, drove his car from Portal Avenue to the 73rd Precinct.

59.     At the 73rd Precinct, plaintiff and officer DOEs 1, 2, and 3 were confronted by DOE 4, a plainclothes African-American officer.

60.     After briefly speaking with officer DOEs 1, 2, and 3 about plaintiff's arrest, officer DOE 4 stated, in sum and substance "Are you serious? What are you guys doing?"

61.     Officer DOEs 1, 2, or 3 responded, in sum and substance, "We got him. It's good. Just book him."

62.     Plaintiff was then taken to and placed in a holding cell.

63.     Approximately 90 minutes later, officer DOE 4 came to the holding cell and called plaintiff's name.

64.     Plaintiff started talking to officer DOE 4 about his arrest.

65.     After plaintiff described specific details of his arrest, officer DOE 4 interrupted, yelling, in sum and substance, "it didn't happen like that. I was there."

66.     The first time plaintiff saw DOE 4 was when he arrived at the 73rd Precinct.

67.     Officer DOE 4 fingerprinted and photographed plaintiff.

68.     Plaintiff was charged with criminal possession of a controlled substance in the third degree, narcotic drug with intent to sell (NY PL 220.16 (1)), and criminal possession of a controlled substance in the seventh degree (NY PL 220.03).

69.     At some point in the mid to late morning of August 4, 2012, plaintiff was transferred to Central Booking.

70.     At Central Booking, plaintiff's retinas were scanned and he was placed in a holding cell.

71.     In the middle of the afternoon on August 5, 2014, after spending more than thirty-six (36) hours in custody, plaintiff was told that he was free to leave without further explanation.

72.     Upon information and belief, the Kings County District Attorney's Office declined to prosecute the baseless charges against plaintiff.

73.     Plaintiff was not read his *Miranda* rights the entire time that he was in custody.

74.     At all times relevant herein, the individual defendant police officers were engaged in a joint venture. The individual police officers assisted each other in performing the various actions described and lent their physical presence and the support and the authority of their office to each other during the said events.

75.     Prior to his arrest, plaintiff was hired to start a new job working with children in the foster care system.

76.     Upon information and belief, employers who have employees that work with children must register their employees with the City and are notified if an employee is arrested.[1]

77.     Prior to starting his employment working with children in the foster care system, plaintiff had a personal relationship with his employer.

78.     Following his arrest, plaintiff's employer ran a background check on him.

79.     Plaintiff's background check was sent to his home with instructions to return it to his employer.

80.     Plaintiff opened the report and saw that his August 4, 2012 arrest was included.

81.     Instead of giving his employer the background check, plaintiff quit his job in order to hide the fact that he had been arrested, even though the baseless charges were not prosecuted.

82.     Shortly after his false arrest plaintiff became homeless, living in a shelter for three months.

83.     As a result of plaintiff's false arrest and unlawful imprisonment, he continues to suffer from anxiety, especially in public spaces.

84.     Prior to his arrest, plaintiff had psychological problems and had been diagnosed with bipolar disorder.

85.     Plaintiff's psychological condition was exasperated by his false arrest and the time he spent unlawfully detained.

---

[1] *See* N.Y. ADC. § 21-119.

86.     Defendants' conduct caused plaintiff to suffer loss of liberty, emotional and psychological pain, embarrassment, humiliation, harm to his reputation, monetary damages, and deprivation of his constitutional rights.

### New York City Police Department's 73rd Police Precinct

*2011 Stop and Frisk Statistics*

87.     In 2011, the year that the NYPD conducted the highest number of stops and frisks on record, the 73rd Precinct had the second most stops of any precinct with 25,167.[2]

88.     Of the 25,167 stops, 22,365, or nearly 89 percent of all stops, were of innocent people. Also the second highest of all precincts.[3]

89.     Of the 25, 167 stops, 23,748, or nearly 98 percent, were stops of African-Americans or Latinos.

90.     Of the 25,167 stops conducted by officers from the 73rd Precinct, 13,338 led to frisks, also the second most of any precinct.[4]

*2012 Stop and Frisk Statistics*

91.     In 2012, the year plaintiff was stopped and frisked by officers from the 73rd Precinct, the 73rd Precinct had the second most stops of any precinct with 22,148.[5]

92.     Of the 22,148 stops conducted by officers from the 73rd Precinct, 20,998, or nearly 95 percent of those stops, were of innocent people.[6]

---

[2] New York Civil Liberties Union, *Stop-and-Frisk 2011*,
http://www.nyclu.org/files/publications/NYCLU_2011_Stop-and-Frisk_Report.pdf (last visited July 31, 2015).
[3] *Id.*
[4] *Id.*
[5] New York Civil Liberties Union, *Stop-and-Frisk 2012*,
http://www.nyclu.org/files/publications/2012_Report_NYCLU_0.pdf (last visited July 31, 2015).
[6] *Id.*

93.     Of the 22,148 stops conducted in the 73rd Precinct, 21,270, or over 99 percent of the stops, were stops of African-Americans or Latinos.[7]

94.     Of the 22,148 stops conducted by members of the 73rd Precinct, 9,951 led to frisks, the fourth most of any New York City Police Precinct.[8]

95.     Those illegal stops and frisks within the 73rd Precinct were accompanied by numerous, similar, unconstitutional stops and frisks throughout Kings County and New York City, as established through the class action lawsuit, *Floyd v. City of New York.*[9]

### FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 – Violations of Plaintiff's Fourth, Fifth, and Fourteenth Amendment Rights by Individual Defendants

96.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

97.     In committing the acts and omissions complained of herein, defendants DOE 1, 2, 3, ETC. acted under color of state law to deprive Plaintiff of certain constitutionally protected rights under the Fourth and Fourteenth Amendments to the United States Constitution, including, but not limited to:

  a.  the right to be free from unreasonable search and seizure;

  b.  the right to be free from arrest without probable cause;

  c.  the right to be free from false imprisonment, that being wrongful detention without good faith, reasonable suspicion, or legal justification, and of which detention Plaintiff was aware and to which he did not consent;

  d.  the right to be free from the lodging of false criminal charges by police officers;

  e.  the right to be free from abuse of power;

---

[7] *Id.*
[8] *Id.*
[9] F. Supp. 2d 540 (S.D.N.Y. 2013).

    f.  the right to be free from deprivation of liberty without due process of law; and

    g.  the right to equal protection, privileges and immunities under the laws.

98.    In committing the acts and omissions complained of herein, defendants DOE 1, 2, 3, ETC. breached their affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.

99.    As a direct and proximate result of defendants DOE 1, 2, 3, ETC. deprivation of Plaintiff's constitutional rights, Plaintiff suffered the injuries and damages set forth above.

100.    The unlawful conduct of defendants DOE 1, 2, 3, ETC. was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

### SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983 – New York City's Municipal Liability for Failure to Properly Screen, Train, Supervise and Discipline NYPD Officers

101.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

102.    All of the acts by the defendants described above were carried out pursuant to policies, practices, and/or customs of the City of New York, which were in existence at the time of the conduct alleged and were engaged in with the full knowledge, consent, and under the supervisory authority of the NYPD.

103.    The unconstitutional conduct of officer DOEs 1, 2, 3, etc. was directly and proximately caused by policies, practices, and/or customs devised, implemented, enforced, encouraged, and/or sanctioned by the City, through its policy-makers, agents, servants, and employees.

104.    These actions resulted from and were taken pursuant to *de facto* policies and/or well-settled and widespread customs and practices of the City, which were implemented by the NYPD.

105.    The existence of such unlawful *de facto* policies and/or well-settled and widespread customs and practices has been known to supervisory and policy-making officers and officials of the City and NYPD, including, without limitation, the former Police Commissioner, and their predecessors in interest, for a substantial period of time.

106.    These policies, practices, and/or customs result from inadequate training of NYPD officers, improper written polices and training protocols of the NYPD, insufficient supervision of NYPD officers, and a failure to discipline officers who have conducted unlawful stops and/or arrests as part of their policing duties.

107.    With deliberate indifference to plaintiff's constitutional rights, defendant City has directly and proximately caused the NYPD's policy, practice and/or custom of suspicionless stops and frisks in violation of the Fourth and Fourteenth Amendments by devising, implementing, enforcing, adopting, sanctioning, and ratifying a policy, practice and/or custom of (a) failing to properly screen and train NYPD officers; (b) failing to adequately supervise and discipline NYPD officers; and (c) encouraging, sanctioning, and failing to rectify the NYPD's constitutional abuses.

108.    By displaying deliberate indifference toward a widespread practice of unconstitutional stops and frisks, the City caused plaintiff to be subjected to the violations of his constitutional rights alleged herein.

109.    As a result of the foregoing, plaintiff suffered the injuries and damages alleged herein.

## **DEMAND FOR RELIEF**

**WHEREFORE**, Plaintiff demands the following relief against the defendants, jointly and

severally:

(a)   compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

(b)   punitive damages from defendants to the extent allowable by law;

(c)   attorneys fees;

(d)   the costs and disbursements of this action;

(e)   interest; and

(f)   such other and further relief as this Court deems just and proper.

Dated: New York, New York
       August 4, 2015

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/2600 Suite
New York, New York 10016
(212) 490-0400

_____
Myron Beldock
Keith M. Szczepanski

*Attorneys for Plaintiff Carlton Whitely*

**VERIFICATION**

STATE OF NEW YORK    )
                          :ss.:
COUNTY OF NEW YORK  )

      MYRON BELDOCK, being duly sworn, states:

      I am an attorney for the plaintiff in the within action and my office is located at 99 Park Avenue,  PH/Suite 2600, New York, New York, which is within the County of New York.  This verification is made by me because the plaintiff is not within the County of New York, which is the county where I have my office.

      I have read the foregoing Verified Complaint and know its contents.  The factual allegations are made upon information and belief, and are based on my and my associate, Keith Szczepanski's inquiries, the contents of our files and discussions I have had with plaintiff.  The complaint is true to my knowledge, except as to matters alleged on information and belief, and as to those matters, I believe them to be true.

                                    _____
                                    MYRON BELDOCK

Sworn to before me this
4th day of August, 2015.

_____
Notary Public

KEITH MICHAEL SZCZEPANSKI
Notary Public, State of New York
No. 02SZ6325315
Qualified in Kings County
Commission Expires May 26, 2019